**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UTICA MUTUAL INSURANCE COMPANY,

                        Plaintiff,                6:12-cv-00196 (BKS/ATB)

v.

MUNICH REINSURANCE AMERICA, INC.,

                        Defendant.

---

MUNICH REINSURANCE AMERICA, INC.,

                        Plaintiff,                6:13-cv-00743 (BKS/ATB)

v.

UTICA MUTUAL INSURANCE COMPANY,

                        Defendant.

---

**Appearances:**

Syed S. Ahmad
Patrick M. McDermott
Hunton & Williams LLP
2200 Pennsylvania Avenue NW
Washington, D.C. 20037
*For Utica Mutual Insurance Company*

Mary Beth Forshaw
Christopher G. Lee
Simpson, Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
*For Utica Mutual Insurance Company*

Bruce M. Friedman
Crystal D. Monahan
Jason B. Eson
Rubin, Fiorella & Friedman LLP
630 Third Avenue, 3rd Floor

New York, NY 10017
*For Munich Reinsurance America, Inc.*

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

These related diversity breach of contract actions arise from disputes between Utica Mutual Insurance Company ("Utica") and Munich Reinsurance America, Inc. ("Munich") regarding monies owed under the terms of the facultative reinsurance certificates Munich issued to Utica in 1973 (No. 12-cv-196) and 1977 (No. 13-cv-743).[1] The Court held a bench trial in both cases from July 9 to 25, 2018, and will render a decision after post-trial briefing is complete. Presently before the Court are two remaining evidentiary matters: (i) the admissibility of transcripts from the underlying coverage litigation, *Cannon Electric, Inc. v. Ace Property & Casualty Co.*, (Dkt. Nos. 346, 386, 394, 397, 406, 407, 428); and (ii) the parties' "unresolved exhibit issues," (Dkt. No. 427).

**II.     *CANNON ELECTRIC* TRANSCRIPTS**

Relying on Federal Rule of Civil Procedure 32(a)(8), Utica seeks to admit, as trial evidence, the transcripts of Barry Bradshaw, Thomas Caveny, John Cizza, Dan Daly, Marcia Schilling, and Daniel Stedman, all of whom were deposed between 2008 and 2011 in connection with the *Cannon Electric* action. (Dkt. No. 346, at 34; Dkt. No. 394, at 2, Dkt. No. 406, at 3). In 2003, Cannon Electric, Inc., Goulds Pumps, Inc., and others filed an amended complaint in California Superior Court against American Re-Insurance Company (now Munich), Utica, and approximately thirty-five other insurance companies. (Dkt. No. 386-2, at 2–4). The *Cannon Electric* action concerned, among other things, whether the 1978–82 Utica primary policies were

---

[1] For convenience, unless otherwise specified, docket citations are to the filings in No. 12-cv-196.

subject to aggregate limits.[2] (Dkt. No. 386, at 4). Munich argues that although it was a named defendant in *Cannon Electric*, it was named only because it issued excess insurance policies to ITT, and that it had no interest or motive to question witnesses regarding Goulds or Goulds' insurance coverage. (Dkt. No. 407, at 5). Munich opposes the admission of these transcripts on the grounds that the defendant insurers in *Cannon Electric* did not have the same motive to cross-examine the deponents as Munich regarding aggregate limits and, even if the deposition testimony falls within Fed. R. Civ. P. 32(a)(8), the testimony concerning aggregate limits should be excluded because it is duplicative of trial testimony, and is irrelevant. (Dkt. No. 407).

Federal Rule of Civil Procedure 32(a)(8) provides:

> A deposition lawfully taken and, if required, filed in any federal-or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence.

Fed. R. Civ. P. 32(a)(8).[3] "The 'same subject matter' and 'same parties' requirements have been 'construed liberally in light of the twin goals of fairness and efficiency.'" *Fed. Hous. Fin. Agency v. Merrill Lynch & Co., Inc.*, No. 11-cv-6202, 2014 WL 798385, at *1, 2014 U.S. Dist.

---

[2] Utica describes Cannon Electric as "a California state case involving insurance coverage for a variety of issues, including for bodily injury claims against Goulds arising out of asbestos-containing materials." (Dkt. No. 386, at 5).

[3] Rule 802 of the Federal Rules of Evidence states:

Hearsay is not admissible unless any of the following provides otherwise:
- a federal statute;
- these rules; or
- other rules prescribed by the Supreme Court.

Fed. R. Evid. 802. Federal Rule of Civil Procedure 32(a)(8), which governs the use of depositions in court proceedings, is one of the "other rules prescribed by the Supreme Court." *See* Fed. R. Evid. 802 advisory committee's note to 1972 proposed rules (referring to Rule 32 as an example of "other rules"); *see Ueland v. United States*, 291 F.3d 993, 996 (7th Cir. 2002) ("Rule 32(a), as a freestanding exception to the hearsay rule, is one of the 'other rules' to which Fed. R. Evid. 802 refers. Evidence authorized by Rule 32(a) cannot be excluded as hearsay, unless it would be inadmissible even if delivered in court."). If the witness is unavailable, prior testimony may also be admissible under Fed. R. Evid. 804(b)(1), which applies to former testimony. *See* 8A Charles Allen Wright et al., Federal Practice and Procedure § 2150 (3d ed. 2010) ("As a general matter, either avenue for admissibility will suffice; admissibility under Rule 32 makes the requirements of Rule 804(b)(1) irrelevant.").

LEXIS 26130, at *2 (S.D.N.Y. Feb. 28, 2014) (quoting *Hub v. Sun Valley Co.*, 682 F.2d 776, 778 (9th Cir. 1982)). Indeed, "the key question in deciding whether the depositions may be used is whether the cases are sufficiently similar such that the party-opponent in the prior case had 'the same interest and motive' to cross-examine the deponent as the present opponent." *S.W. v. City of New York*, No. 09-cv-1777, 2012 WL 1100906, at *2, 2012 U.S. Dist. LEXIS 46392, at *10–11 (E.D.N.Y. Apr. 2, 2012) (quoting *Rivera v. Am. Exp. Lines*, 13 F.R.D. 27, 28–29 (S.D.N.Y. 1952)); *c.f. United States v. Whitman*, 555 F. App'x 98, 103 (2d Cir. 2014) (explaining that a "party had a 'similar motive'" under Fed. R. Evid. 804 "if it had a 'substantially similar degree of interest in prevailing on that issue' at the two proceedings" (quoting *United States v. DiNapoli*, 8 F.3d 909, 912 (2d Cir. 1993))).

With respect to the issue of whether Utica's umbrella policies covered expense after exhaustion, Munich points to the ambiguity and limited probative value of the deposition testimony of Gould's former General Counsel, E. Barry Bradshaw. (Dkt. No. 407, at 4–5 n.4). Munich does not, however, appear to contest Utica's assertion that *Cannon Electric* involved the same issue concerning the interpretation of the umbrella policies or that the party-opponents in *Cannon Electric* had the same motive and interest to cross examine Bradshaw regarding his interpretation. (Dkt. No. 407). Accordingly, the Court grants Utica's request to admit Bradshaw's deposition testimony regarding the umbrella policy's coverage of expense costs, and the portions of that testimony marked by the parties are admissible. (*See* Dkt. No. 397-1, at 4 and Dkt. No. 407, at 4–5  n.4).

With respect to the aggregate limit issue, Munich argues that "[s]ince Utica's witnesses have already admitted . . . that they paid to compromise" the aggregate limit issue, "evidence regarding their original intent is no longer material" and will not "assist in resolving any issue

4

currently before this Court." (Dkt. No. 407, at 4). The factual question of whether the parties intended for the umbrella policies to have aggregate limits is relevant insofar as it bears on the litigation risk of Utica's position regarding aggregate limits—in the California and New York lawsuits—and the reasonableness of Utica's allocation of settlement value to the aggregate limit claims. *See*, *e.g.*, *United States Fid. & Guar. Co. v. American Re-Ins. Co.*, 20 N.Y.3d 407, 422-423 (2013); *New Hampshire Ins. Co., v. Clearwater Ins. Co.*, 129 A.D.3d 99, 112–16 (1st Dep't 2015). Thus, while the Court rejects Munich's view that the evidence is irrelevant, in light of the evidence already in the record on this issue, as discussed below, the Court finds that the probative value of the *Cannon Electric* deposition testimony on aggregate limits issue is limited.

Even assuming that Utica has shown that the *Cannon Electric* action and the present action involve the "same subject matter," that Munich's and Utica's status in *Cannon Electric* satisfies the requirement that the action be "between the same parties," and that the excess insurers that participated in the depositions had the same motive to cross-examine[4] the witnesses as Munich has in this case,[5] the Court concludes that, because the deposition testimony (summarized below) is duplicative of trial testimony, its probative value is substantially outweighed by the danger of "needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Utica seeks to admit testimony by Goulds' former general counsel Barry Bradshaw, that he understood, based on his communications with Gould's brokers, that Utica's primary policies contained aggregate limits. (Dkt. No. 397-1, ¶ 1). Thomas Caveny, the broker responsible for the Goulds account, testified that the limits of liability for the 1980–81 primary policy included a

---

[4] Utica views Rule 32(a)(8) as mandatory, arguing that if the deposition was lawfully taken and the present action involves "the same subject matter between the same parties," the motive for cross-examination is irrelevant, and the deposition must be admitted. Utica provides no legal authority for this argument.

[5] According to Utica, in *Cannon Electric*, Goulds' excess insurers conducted the cross-examinations of the witnesses at issue. (Dkt. No. 386, at 9–10). These excess insurers, like Munich, argued that the 1978–82 primary policies did not contain aggregate limits. Thus, Utica argues, the excess insurers had the same motive to cross-examine the deponents as Munich would have had if it had participated in the depositions.

$500,000 aggregate limit. (*Id*. ¶ 2). John Cizza, who worked in Utica's national accounts department in 1978, testified that "the use of the term single limit included aggregate limit" and that "in his experience products and completed operations coverage was always subject to an aggregate limit." (*Id*. ¶ 6). Daniel Daly, a Utica underwriter who was involved in underwriting the Goulds policies in the early 1980s, testified that the 1977–81 primary policies contained or were "intended to be subject to" aggregate limits. (*Id*. ¶ 4). Daly also testified that Utica never knowingly issued policies covering products and completed operations that did not have aggregate limits, that Utica employees would not know how to rate products coverage with an aggregate limit, that any blank spots on the primary policies were errors, and that if Utica had "eliminated the aggregate limit and then . . . reestablished it," there would have been internal correspondence and correspondence with the insured. (*Id*.). Marcia Schilling, a Utica employee who rated the Goulds policies in the late 1970s and early 1980s, testified that "Utica did not write products liability without aggregate limits" and that she "never issued a policy without an aggregate limit" and that there "would be no way to rate" a policy without an aggregate limit. (*Id*. ¶ 5). Daniel Stedman, a Utica underwriter who was trained in the early 1980s testified that "as part of that training, he learned about the reasons for aggregate limits and that with regard to products liability, if there was no aggregate, that transference of risk becomes unlimited to the company" and that issuing policies without aggregate limits could result in financial ruin. (*Id*. ¶ 7).

Utica presented ample testimony at trial via Utica employees Marcia Schilling, Kristen Martin, and Bernard Turi on all of these issues, including Utica's intent to issue the Goulds primary policies with aggregate limits, the fact that primary policies may have been issued with blank spots where aggregate limits should be indicated, the rating of policies without aggregate

6

limits, and its practice of issuing products liability policies with aggregate limits. In support of this testimony Utica introduced marked up primary policies, broker letters to Goulds, certificates of insurance, and the 1981 binder for the primary policy. (P-251–258, P-260). The Court therefore concludes that the cumulative nature of the *Cannon Electric* deposition transcripts regarding aggregate limits outweighs any probative value. Fed. R. Evid. 403; *see also Rao v. Rodriguez*, No. 14-cv-1936, 2017 WL 1753489, at *3 (E.D.N.Y. May 1, 2017) (observing that admissibility under Fed. R. Civ. P. 32(a)(8) was still "subject to consideration of probativity and prejudice under FRE 403").[6] Accordingly, except for Bradshaw's deposition testimony regarding the umbrella policy's coverage of expense costs, which is admitted, the *Cannon Electric* transcripts are excluded from the trial record.

## III.   UNRESOLVED EXHIBIT ISSUES

### A.   Tillinghast Reports – P-229, P-230, P-232, and P-233

At trial, Munich objected to the admission of a redacted "Tillinghast Report" (P-231) on the ground that the redactions rendered the report incomplete, noting that the report itself advised that it "should be considered only in its entirety" as "the use of parts of it in isolation may result in erroneous or misleading conclusions." The Court, after reviewing rulings by United States Magistrate Judge Andrew T. Baxter concerning Utica's redactions, (Dkt. Nos. 114, 120), admitted the Tillinghast Report (P-231), explaining that "redactions and other issues will go to the weight of that document." (Trial Tr. at 462).

Munich objects to the admission of other Tillinghast Reports (P-229, P-230, P-232, and P-233) on the same ground—that the redactions render them incomplete. (Dkt. No. 427, at 2). The redactions and instruction that the report must be considered as a whole will go to the weight

---

[6] No LEXIS citation available.

7

the Court accords the reports. Accordingly, Munich's objection is overruled and P-229, P-230, P-232, and P-233 are admitted.

### B.    Munich's Burnham Account – P-305 and P-307

Utica seeks the admission of what it has characterized as "Munich's underwriting file for its reinsurance of the Burnham account" (P-307) and "Munich's interrogatory responses identifying P-307 as Munich's underwriting file for the Burnham account," (P-305). (Dkt. No. 427, at 3). Utica argues that Munich's underwriting file for the Burnham account is relevant because it is "demonstrably incomplete," and it shows that Munich "did not endorse its reinsurance certificates when it received notice of a change to the reinsured policy." (Dkt. No. 427 at 3). Munich objects to the admission of these exhibits on the grounds that "P-307 is not [Munich's] underwriting file" and the exhibits contain no probative value. (*Id*. at 4). Munich's objection is sustained. Even assuming that Munich's underwriting file for the Burnham account is relevant, the record is insufficient to establish a foundation evidencing that P-307 is that file. *See, e.g.*, Fed. R. Evid. 901(a) ("To satisfying the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). Utica laid no foundation for P-307 at trial, and Munich denies that P-307 is its underwriting file for the Burnham account. Munich's interrogatory response, P-305 at 22, does not identify the documents in P-307 as the underwriting file for the Burnham account. Moreover, even if P-307 were the underwriting file, any minimal probative value of an underwriting file for another account, absent any testimony explaining the document, is substantially outweighed by the danger of wasting time and confusing the issues. Fed. R. Evid. 403; *see Fed. Hous. Fin. Agency v. Nomura Holding Am, Inc.*, No. 11-cv-6201, 2015 WL 629336, at *8, 2015 U.S. Dist. LEXIS 18386, at *22 (S.D.N.Y. Feb. 13, 2015) ( "Fed. R. Evid.

403 has a role to play whether the case is to be tried to a jury or to a judge.") (citation omitted). Accordingly, Utica's request to admit P-305 and P-307 is denied.

### C.     D-402, D-405, D-475, D-484, D-486, and D-543

Munich seeks to admit D-402 (1971–74 Utica umbrella policy materials), D-405 (May 15, 1969 letter from Utica to Goulds concerning coverage for certain causes of action under policies), D-486 (April 14, 1966 letter from Utica to Goulds regarding umbrella coverage), and D-543 (September 15, 1960 letter from Royce & Rosenkrans to counsel for Goulds regarding a description of Utica's umbrella coverage), asserting that they are relevant because they "discuss application of a deductible in the circumstance where the claim is 'not covered by' the underlying policy" and "relate only to the scope of coverage and deal with the circumstance that there never was coverage for the loss in the underlying insurance policies." (Dkt. No. 427, at 5). Munich argues that D-475 (June 20, 1966 "Analysis of General Liability and Umbrella Insurance" coverage that Utica provided to Goulds) is relevant because it references "first dollar" defense coverage. (Dkt. No. 427, at 5).

Utica objects to D-402 on the ground that it "says nothing about defense coverage," and discusses a deductible for the 1971 umbrella policy, which has no bearing on the 1973 and 1977 Umbrellas. (Dkt. No. 427, at 6). The Court agrees. Although D-402 appears to refer to coverage from 1971 to 1974 (A-0000417), there is little in the exhibit that appears relevant to the issues in this case. Accordingly, Utica's objection to D-402 is sustained.

Utica objects to D-405, D-475, D-486, and D-543 as irrelevant to the issues in this case. (Dkt. No. 427, at 7–9). These exhibits are dated from 1960 to 1969, and although Munich argues they are relevant to issues concerning defense coverage and the interpretation of the "not covered by" language at issue, the Court finds any probative value is minimal as they do not concern the relevant time period; according to Utica, concern umbrella policies with provisions that "are not

9

the same or similar" to those at issue here; and, even with respect to those policies, do not directly address the issue of whether the umbrellas cover expense after exhaustion. (Dkt. No. 427, at 6–8). Because any minimal probative value of these exhibits is substantially outweighed by the dangers of wasting time and confusing the issues, the Court declines to admit D-405, D-475, D-486, and D-543.

Munich seeks to admit D-484, which contains a series of letters between the State of New York Insurance Department and Utica in 1974 concerning the umbrella policy defense provision, as well as a copy of a state insurance regulation, as relevant to the interpretation of the "not covered by" language. (Dkt. No. 427, at 5). Munich argues that D-484 "refers to 'a loss not covered by' in such a manner as to exclude any argument that it contemplates exhaustion." (*Id*.). Munich further argues that D-484 is consistent with James Robertson's trial testimony concerning self-insured retention. (*Id*. at 6). Utica objects to D-484 on the ground that it "says nothing about defense coverage" and concerns a regulation that is irrelevant to the parties' intent regarding the "not covered by" language. (*Id*. at 7). Having reviewed the documents in this exhibit, most of which appear to have no relevance to any issue in this case, (*see* D-484, at R0066094–98 (discussing exclusion "for loss or liability on account of discrimination")), the Court concludes that any probative value to the interpretation of the "not covered by language" or Robertson's testimony concerning self-insured retention is minimal and far outweighed by the danger of wasting time and confusing the issues. Accordingly, Utica's objection is sustained and D-484 is excluded.

**IV.   CONCLUSION**

For these reasons, it is

**ORDERED** that the *Cannon Electric* transcripts concerning aggregate limits and P-305, P-307, D-402, D-405, D-475, D-484, D-486, and D-543 are **NOT ADMITTED** as evidence; and it is further

**ORDERED** that the portions of the Cannon Electric deposition testimony of Barry Bradshaw that the parties have marked as relevant to the interpretation of the expense provision in the umbrella policies (*See* Dkt. No. 397-1, at 4 and Dkt. No. 407, at 4-5 n.4) are **ADMITTED** as evidence; and it is further

**ORDERED** that P-229, P-230, P-232, and P-233 are **ADMITTED** as evidence.

**IT IS SO ORDERED.**

Dated:  August 29, 2018
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge